In re the MARRIAGE OF
Tanya MALLOY and
Robert Malloy

Upon the Petition of Tanya Malloy,
Petitioner–Appellee,

And Concerning Robert Malloy,
Respondent–Appellant.

No. 03–1282.

Court of Appeals of Iowa.

May 14, 2004.

Constance Stannard of Johnston & Nathanson, P.L.C., Iowa City, for appellant.

James McGrath of McGrath & McGrath, P.C., Keosauqua, and Thomas Murphy of Hopkins & Huebner, P.C., Des Moines, for appellee.

Thomas J. Miller, Attorney General, Ann Marie Brick, Special Assistant Attorney General, and Kevin Kaufman, Assistant Attorney General, for the State.

Heard by SACKETT, C.J., and HUITINK and MILLER, JJ.

SACKETT, C.J.

Appellant Robert Malloy and appellee Tanya Malloy petitioned seeking modification of the custodial provisions of their July 2001 dissolution decree. They both contended there had been a substantial change of circumstances and they should be named primary physical custodian of their two daughters. The district court

found no substantial change of circumstances, denied both of their petitions, and made certain modifications to the custodial provisions of the decree that were not requested by either party. Robert has appealed, contending (1) he proved the required change of circumstances to support a modification granting him primary physical care of both daughters, (2) after finding there was no change in circumstances the district court should not have modified custody, (3) the district court did not correctly calculate child support, and (4) the amount of a judgment in favor of the State should be modified. Tanya contends the district court should be affirmed. We affirm the award of joint custody, but modify to name Robert as primary physical custodian of both children and to establish Tanya's visitation. The State agreed to modification of its judgment, and we modify it accordingly. We reverse the child support award in favor of Tanya and remand to the district court to establish her child support obligation.

Robert and Tanya's daughters, Kylea and Katie, were born in August of 1997 and December of 1998. At the time of the dissolution the custodial issues were resolved by the parties' stipulation which was approved by the court and made a part of the decree. The parties were to have joint legal custody and physical care of the children. Robert would have primary physical care of Katie and Tanya would have primary physical care of Kylea. Kylea would visit in Robert's home on odd-numbered weeks and Katie would visit with Tanya in even-numbered weeks. The result was that the children were together in each parent's home every other week. Robert was ordered to pay Tanya $57.10 a month as child support.

Robert first became disillusioned with the arrangement and petitioned seeking primary physical care of both the girls and child support from Tanya. Tanya answered contending that Robert's petition should be dismissed, she should be named primary custodian of both children, and Robert should pay increased child support. After hearing the evidence the district court found:

> Both parties have failed to establish by a preponderance of the evidence that conditions since the July 23, 2001, decree have so materially and substantially changed that the children's best interest made it expedient to modify the award of shared physical care. Neither party has demonstrated a superior claim to minister to the needs of the children more effectively. Tanya and Robert shall have joint physical care of the children.

The court then found it was disruptive for the children to change homes every week and modified the decree to provide the children should change homes every other week and went on to establish a child support award in Tanya's favor in the amount of $120 a week.

Robert first contends he should have primary physical care of both of his daughters. He contends he has shown the required change of circumstances. He contends both parties have acknowledged the current care arrangement is not working. He contends he has shown substantially more stability since the dissolution decree was entered than has Tanya, who has had frequent moves and job changes. He further contends that Tanya's election to move a man named Danny into her home has created a bad influence on the children and that Danny has interfered with communications between Robert and Tanya on issues involving the children. He also contends Tanya puts the children at risk by smoking while the children are in the house and the car. He further points out that a part Saint Bernard and part Rott-

weiler dog that lives in Tanya's home presents a risk to the children.

We review de novo. Iowa R.App. P. 6.4. Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995). We give weight to the trial court's findings of fact, but we are not bound by them. Iowa R.App. P. 6.14(*6*)(*g*). Courts are empowered to modify the custodial terms of a dissolution decree only when there has been a substantial change in circumstances since the time of the decree not contemplated by the court when the decree was entered, which is more or less permanent and relates to the welfare of the child. *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct.App. 2002); *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct.App.1996). The parent seeking to change the physical care from the primary custodial parent to the petitioning parent has a heavy burden and must show the ability to offer superior care. *Melchiori*, 644 N.W.2d at 368; *In re Marriage of Mayfield*, 577 N.W.2d 872, 873 (Iowa Ct.App.1998). This is the burden Robert bears in seeking primary care of Kylea. However, Robert was granted primary physical care of Katie. He was granted her primary care in the decree, so actually he is seeking to decrease the visitation time Katie spends with her mother.

We first address Robert's contention the district court should have awarded him primary physical care of both children.

Robert has primary physical care of Katie. He actually was only seeking to modify Tanya's visitation with the child. Tanya had primary physical care of Kylea and Robert sought the modification to grant him primary physical care. The burden to change a visitation provision in a decree is substantially less than to modify custody. *In re Marriage of Wersinger*, 577 N.W.2d 866, 868 (Iowa Ct.App.1998); *In re Marriage of Jerome*, 378 N.W.2d 302, 305 (Iowa Ct.App.1985). Under the unique facts here we require Robert to meet the burden required for a change of custody as to both girls. That is, he must show both that there has been a substantial change in circumstances and he can render superior care.

The district court, while leaving the children in joint physical care, actually found changed circumstance sufficient to modify the primary care. The court placed the children in Tanya's physical care for two weeks and Robert's physical care for two weeks reasoning it was disruptive for the children because of impending school schedules. We agree with this finding to the extent the parties both recognized the current situation was not working well. We have considered as evidence showing changed circumstance the fact the shared custody provisions agreed to by the parties and incorporated into their decree did not evolve as envisioned by either of the parties or the court. *See Dale*, 555 N.W.2d at 245.

Additionally the presence of Danny in Tanya's home is a changed circumstance. That said we address Robert's argument that Danny's presence in Tanya's home is not in the children's interests. If a parent seeks to establish a home with another adult, that adult's background and his or her relationship with the children becomes a significant factor in a custody dispute. *In re Marriage of Decker*, 666 N.W.2d 175, 179 (Iowa Ct.App.2003). The companion will have an impact on the children's lives, and the type of relationship the parent has sought to establish and the manner in which he or she has established it is an indication of the parent's priorities. *See id.* Robert has legitimate concerns

about the children living in a home with Danny and with Danny caring for them alone as he does on occasion. Danny has been in drug treatment, was arrested for driving while under the influence, and continues to drink. Although other than his arrest for driving while intoxicated there is no other evidence his drinking has caused a problem, the use of alcohol after treatment for drug abuse is a matter of serious concern. Danny also does not have a current driver's license. He has a daughter by a prior marriage and is behind in his child support to her. On the positive side Danny has a relationship with his daughter and she visits several times a month in the home Danny occupies with Tanya. Danny is employed as a heavy equipment operator and contributes financially to the operation of the home.

Robert and Danny have problems communicating. Robert places the communication problems on Danny and Danny places them on Robert. We note however, that both Tanya and Robert agreed they had few problems in communicating until Danny became involved. While the district court did not find these problems have risen to the level that it justified the change in custody Robert sought, we do not minimize them. Tanya has a responsibility to assure she has good communications with Robert on issues that concern the children and that Danny does not interfere with these communications, just as Robert has a responsibility to assure he maintains the line of communications with Tanya on issues concerning the children. If Danny is, as some of the evidence may show, interested in inciting trouble with Robert, Tanya has an obligation to see that Danny does not interfere with Robert's relationship with the children. *See In re Marriage of Crotty*, 584 N.W.2d 714, 716 (Iowa Ct.App.1998). Discord between parents that has a disruptive effect on children's lives has been held to be a substantial change of circumstance warranting modification of a custody decree. *See In re Marriage of Walton*, 577 N.W.2d 869, 870 (Iowa Ct.App.1998). Robert has shown a substantial change of circumstances.

We next address whether he has shown he can render superior care. *See id.* Robert continues to live in the same house where he has lived for five years. Other than the time the children are with him, he lives alone. Robert was honorably discharged in 1998 after four years in the Marine Corps. Since that time he has worked for the same employer. He has parents and a brother and sister-in-law with whom he is close living in the area. Tanya's employment and living arrangements have changed several times since the parties' separation. She has allowed Danny to interfere with her communication with Robert concerning the children's interests. She filed a cross-claim contending the agreed upon situation was not working well.

We disagree with the district court that the evidence does not support a substantial change of circumstances such as would support transferring primary physical care of both girls to Robert and we modify the decree accordingly.

We establish Tanya's visitation as that which the parties can agree on. If they cannot agree then she shall have visitation with both children on the first and third weekends of each month from 6 o'clock Friday evening until 6 o'clock Sunday evening. She shall further have the children for four full consecutive weeks during the period from June 10 to August 15 of each year. She shall give Robert a written or oral notice as to her designation of the summer visitation period no later than thirty days in advance of the period. She shall have both of the children in odd-

numbered years on Easter Day, Thanks-giving Day and New Years Day from 5 o'clock on the previous day and terminating at 7:30 the evening of the holiday and on each child's birthday in odd-numbered years. She shall have the children on Mother's Day from 6 o'clock on Saturday evening until 6 o'clock Sunday evening even if it does not fall within her scheduled weekend visits. She shall have the children on her birthday. The children should be returned to Robert by 9 o'clock in the morning of Father's Day and his birthday even if these dates fall during Tanya's visitation time.

Having decided Robert should have primary physical care of both children we need not address his contention that the district court should not have done away with the primary physical care arrangement and modified it to have the children change homes every two weeks. Robert argues the district court found no substantial change of circumstances and noted neither party originally asked for the modification the district court made.[1]

■ Robert next challenges the fixing of child support. We remand to the district court to establish child support based on the new custodial arrangement but we first need to decide if the district court correctly established support based on Tanya's decreased earnings. The court determined Robert was paying Tanya child support of $57.18 a month based on Tanya earning an annual wage at the time of the dissolution of $15,600 and Robert earning an annual wage at the time of the dissolution of $23,040. The court found at the time of the modification hearing Tanya only earned $9,000 a year and Robert earned $32,123.

■ Robert contends Tanya is only working twenty-four hours a week and she should not be allowed to benefit from a voluntary reduction of her income. We agree. When a parent voluntarily reduces his or her income or decides not to work, it may be appropriate for the court to consider earning capacity rather than actual earnings when applying the child support guidelines. *In re Marriage of Nelson,* 570 N.W.2d 103, 106 (Iowa 1997); *State ex rel. Hartema v. Cottrell,* 513 N.W.2d 765, 768 (Iowa 1994); *State ex rel. Lara v. Lara,* 495 N.W.2d 719, 721–22 (Iowa 1993). Before using earning capacity rather than actual earnings a court must, however, make a determination that, if actual earnings were used, substantial injustice would occur or adjustments would be necessary to provide for the needs of the children and to do justice between the parties. *Nelson,* 570 N.W.2d at 106; *see also In re Marriage of Bergfeld,* 465 N.W.2d 865, 870 (Iowa 1991); *In re Marriage of Flattery,* 537 N.W.2d 801, 803 (Iowa Ct.App.1995). We examine the employment history, present earnings, and reasons for failing to work a regular work week when assessing whether to use the earning capacity of a parent. *Nelson,* 570 N.W.2d at 106; *State ex rel. Gonzales v. Gable,* 474 N.W.2d 581, 583 (Iowa Ct.App.1991).

There is no evidence Tanya is not able to find full-time work at a wage similar to what she was earning at the time of the dissolution nor is there evidence she is unable to work full time. Therefore in assessing her child support obligation the district court should consider her income at what she could earn for full-time work unless other factors which would justify a lower earning capacity have come into existence since the modification was tried.

---

1. Robert argued the modification changes the party's initial decision that they each have primary custody of one child so they each would qualify as head of a household and each pay child support for one child.

The next issue involves a judgment the district court entered against Robert in the amount of $918 for public assistance benefits paid on behalf of the children. The State has filed a statement with this court agreeing the amount of the judgment should be reduced by $228.72, and we accordingly modify the judgment by decreasing it that amount.

Both parties have requested appellate attorney fees. We award none. Costs on appeal are taxed one-half to each party.

**AFFIRMED IN PART AS MODIFIED, REVERSED IN PART, AND REMANDED.**