# IN THE COURT OF APPEALS OF IOWA

No. 14-0418
Filed October 15, 2014

**DOUG LEE STILL,**
　　　　Plaintiff-Appellee,

**vs.**

**TANYA LYN AVENARIUS,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter, Judge.


　　　　Tanya Lyn Avenarius appeals from the trial court decision leaving the primary physical custody of her son with his father, Doug Lee Still, and the summer visitation she was awarded as the result of a petition for modification. **AFFIRMED AS MODIFIED.**


　　　　Robert J. Murphy of Murphy Law Office, Dubuque, for appellant.

　　　　Zeke R. McCartney of Reynolds & Kenline, L.L.P., Dubuque, for appellee.


　　　　Considered by Danilson, C.J., Vogel, J., and Goodhue, S.J.*

　　　　*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2013).

**GOODHUE, S.J.**

Tanya Lyn Avenarius appeals from the trial court decision leaving the primary physical custody of her son with his father, Doug Lee Still, and the summer visitation she was granted as the result of a petition for modification.

## I. Background Facts and Proceedings

The parties to this proceeding were never married but are the parents of a son born in 2005. The son lived with his parents from birth until early 2008, when the parties separated. Still filed a petition to establish care, custody, and visitation of the child, and on July 30, 2008, he obtained a default decree giving joint legal custody to the parties, but granting Still primary physical custody. The decree granted Avenarius such liberal visitation as might be agreeable to the parties. Avenarius was to pay fifty dollars a month in child support. The child was to attend school in the school district in which Still was residing.

Regardless of the custodial order, the child remained with Avenarius during the week and spent weekends with Still. In the four or five years leading up to this action, Avenarius had been living with Eugene Peterson. Avenarius has a twelve-year-old daughter and a twenty-year-old son and Peterson has a twenty-year-old daughter. The five all resided together in one residence. In addition, Avenarius's sister, Heather, occasionally resided at the home. Heather has had alcohol abuse problems and there was a warrant out for her arrest at the time of trial.

The child attended school in Dubuque, completed kindergarten and first grade, and was halfway through the second grade when sometime in February 2013, Still decided not to return the child after spending a weekend with him. Still

had received negative information about the Avenarius home. Peterson's daughter had sent a text message to Still stating she had observed Avenarius's son smoking marijuana near the home.

At the time of trial, Peterson's daughter testified the text was untruthful. The trial court did not find her testimony convincing. Additionally, Peterson's son had been twice charged with underage possession of tobacco, underage possession of alcohol, and possession of marijuana. Both of the older children had dropped out of school before graduation. Avenarius admitted she probably had not been demanding enough of them. Avenarius is not employed outside of the home, but provides daycare for up to four children. No evidence of her income was offered.

The child's residence essentially switched as of February 2013, and from that day forward, he spent weekdays with Still and weekends with Avenarius. He was placed in the Bellvue school system as a result of the change in his residence. There was testimony that his academic skills have accelerated more than would be expected after the change in residence was made. Still, his new wife, Gemma, and the paternal grandmother have helped with the child's academic advancement. On the other hand, there was evidence the child is excited to come back to his mother's residence and hesitant to leave to go to the Still residence when his visitation period ends.

Still admitted he has used marijuana in the past. He frequently uses foul language and drinks alcohol. When the child is being exchanged for visitation, Still sometimes arranged the exchange at a bar or restaurant that serves alcohol. Avenarius also testified that Still was abusive to her and her older son when they

lived with him.  A history of abuse was not established.  Still has held the same job for fifteen years and lived in the same home for twelve years.  He has assisted coaching his son in various athletic activities.  His mother has been active in the child's life as a grandmother and actively supported Still in his role as a father.

The trial court concluded there had been a change of circumstances because of the time the child spent with the mother as the primary caretaker after entry of the original decree.  However, the court concluded Still was better suited to minister effectively to the child's needs as the primary physical custodian.  The court provided Avenarius more than the typical weekend visitation and holiday visitation, and granted two non-consecutive weeks of visitation during the summer.  On appeal Avenarius contends she should have primary custody or, alternatively, extended summer visitation.

## II.  Scope of Review

This is an equity matter and reviewable de novo.  Iowa R. App. P. 6.907. Weight is given to the trial court's finding of fact, and especially regarding the credibility of witnesses, but such findings are not binding on the appellate court. Iowa R. App. P. 6.904(3)(g).

## III.  Discussion

Modification of a custody decree requires a substantial change of circumstances.  *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004).  The moving party must demonstrate by a preponderance of the evidence circumstances have changed since the entry of the decree that was not in the contemplation of the court, and that the child's best interests make a change in

custody expedient. *In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980). However, this case is somewhat unique because the parties initially deviated from the original custody decree.

The objective in a custody dispute is to place the child in the environment most likely to provide for the child's physical, mental, and social growth and maturity. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). In such matters the best interest of the child is paramount. *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995). Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *Id.* Neither Still nor Avenarius requested joint physical custody, so we turn to Avenarius's claim for physical custody. *See* Iowa Code § 598.41(2)(a) (providing the court shall consider granting joint custody on the application of either parent).

Avenarius primarily stresses five reasons she should be granted custody. First, she notes the child's relationship with his half-sister and half-brother and the court's reluctance to divide families. It is generally preferable to keep siblings together, but the preference is not controlling and is subordinate to the long-range best interests of the child, even when the children share the same parents. *In re Marriage of Harris*, 530 N.W.2d 473, 474 (Iowa Ct. App. 1995).

Second, Avenarius asserts Still is not supportive of her relationship and recognition as the mother of the child. Still voluntarily provided Avenarius with additional time with the child, which is the only significant supportive factor she has in these proceedings. When Still apparently recognized and felt the child was better off with Avenarius for a significant amount of time prior to February

2013, he provided it even though the existing custody order had given him primary physical custody. Still continued with this arrangement until he became aware of problems in the Peterson/Avenarius home. There is little, if anything, in the record that would indicate he has not been or will not be supportive of her role as the mother of the child.

Third, Avenarius contends Still's new wife, Gemma, is trying to take her place as the mother of the child. Step-parents are always in a difficult position of being supportive of their new mate's children without acting as a replacement for the child's natural parent. Again, there is nothing in the record to indicate Gemma has crossed that line.

Fourth, Avenarius contends her son is happier with her than with Still and is always excited to see her and reluctant to return to the Stills' home. That assertion is not consistent with the previous two contentions. If Avenarius's ability to measure her son's happiness is correct, it indicates that Still and his new wife are supportive of Avenarius's status as the child's mother. Even if an eight-year-old has a preference as to which parent it wants to reside with, it is not controlling or even a substantial consideration in modification proceedings. *See In re Marriage of Hunt*, 476 N.W.2d 99, 101 (Iowa Ct. App. 1991).

Finally, the remaining factor Avenarius asserts is her status as the primary caretaker in fact until February 2013. Continuity of care is highly important in considering child custody. *In re Marriage of Williams*, 589 N.W.2d 759, 762 (Iowa Ct. App. 1998). In spite of the importance of a history of continuity of care it must give way to the best long-term interest of the child, which is the all-important and overriding standard. *See Hansen*, 733 N.W.2d at 696-697.

Still, Gemma, and Still's mother are involved in the child's education and his extra-curricular activities, and are in a position to concentrate on his upbringing. Still has been regularly employed, has resided in the same home for some time, and gives all the appearances of stability. He and Gemma are married, symbolizing stability, permanency, and a commitment that Avenarius and Peterson apparently do not have. Neither one of the older children as a half-brother or as a stepsister, can be considered good role models. Avenarius's record as a parent is not commendable.

The trial court was not presented adequate information to address the child support Avenarius should pay. Accordingly, the child support set in the original custodial action shall continue.

The summer visitation Avenarius was awarded is an amount that historically can be considered typical. The modern trend is to provide more summer visitation than was awarded in this matter. We see no reason that Avenarius should not be granted two two-week visitation periods to be separated by at least two weeks and modify the summer visitation accordingly.

**AFFIRMED AS MODIFIED.**