**IN THE COURT OF APPEALS OF IOWA**

No. 14-0182
Filed March 11, 2015

**IN RE THE MARRIAGE OF JOLENE MICHELLE JOHNSON
AND PAUL LEE JOHNSON**

**Upon the Petition of
JOLENE MICHELLE JOHNSON,**
        Petitioner-Appellee,

**And Concerning
PAUL LEE JOHNSON,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Robert A. Hutchison,

Judge.


        Paul Johnson appeals from the district court's order modifying the decree

dissolving his marriage to Jolene Johnson.  The modification awarded Jolene

physical care of their two minor children.  We agree with the district court's

findings and affirm.  **AFFIRMED.**


        Mark R. Hinshaw of The Law Offices of Mark R. Hinshaw, West Des

Moines, for appellant.

        Elizabeth Kellner-Nelson of Kellner-Nelson Law Firm, P.C., West Des

Moines, for appellee.


        Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, J.**

Paul Johnson appeals from the district court's order modifying the decree dissolving his marriage to Jolene Johnson. The modification awarded Jolene physical care of their two minor children. We agree with the district court's findings and affirm.

**I. Factual and Procedural Background**

Paul and Jolene were married in September 2007. They had two children together who are currently seven and four years old. Their marriage was dissolved by court decree on October 31, 2011. The dissolution decree awarded the parents joint custody and, despite their contentious relationship, joint physical care of the children.

Paul took on a new paramour, Cyrena, with whom he now lives. The district court's findings of fact—which are supported by the record—state:

> Paul lives with Cyrena Johnson, age 28; their history and status [are] confusing. At one point, Paul testified that he and Cyrena had been together for two years. However, later testimony established that they moved in together in October 2012 after knowing one another for approximately three months. . . . [P]olice were called to Paul's home on September 29, 2012 in reference to a possible domestic dispute. However, at that time, Cyrena denied any romantic relationship between her and Paul. The fact the police could not determine whether there was an intimate relationship between Paul and Cyrena was one of the reasons no domestic abuse assault charge was filed, according to the report. Thus it is not clear when their romantic relationship began.

In addition to Paul and Jolene's two children, there are four other children living in Paul's household: Cyrena's three daughters from two prior relationships and Paul and Cyrena's child. Paul's older child from another relationship visits in Paul and Cyrena's home.

In the years following the dissolution decree, Paul and Jolene's already tenuous relationship grew even more strained. Cyrena interjected herself into the tense relationship as well by communicating directly with Jolene to criticize or challenge Jolene about her care of the children. Paul began to permit his parents or Cyrena[1] to take on the care of the children without honoring Jolene's first right of refusal as provided in the dissolution decree.[2] Jolene discovered this fact when she went to Paul's house to check on the children after she could not reach Paul by phone. She discovered that Paul had left the children in his mother's care. An altercation between Paul's mother and Jolene ensued, and police were called to the scene.

Another ongoing incident during the period between the dissolution and modification involved an infestation of bed bugs in Paul's home. The children were returning to Jolene's care with mysterious bug bites. Jolene asked Paul to have his home checked for an infestation numerous times. Paul and Cyrena denied that there was any problem at their home, insinuated that Jolene's home may have been the source of the bites, and claimed that a professional had determined there was no problem at Paul's home. Ultimately a bed bug infestation was discovered in Paul's home.

Both Paul and Jolene claim that the other disparages them in front of the children. The older child, P.J., has demonstrably borne the brunt of the parties'

---

[1] The record also reflects Paul sometimes tasks an unnamed individual—who is known to the children as "cousin" and appears to be either a friend or relative of Cyrena's—with the children's care.

[2] The decree provides: "If either party is unable to be personally present with the children during their respective visitation or parent time for longer than three (3) hours, they shall first offer the time to the other parent to spend with the children prior to obtaining third party care."

acrimony. On the recommendation of one of P.J.'s teachers, Jolene arranged for him to begin meeting with a counselor.[3] After six months of counseling, P.J.'s counselor wrote:

> [P.J.] is a sad and confused child. He does have a great deal of anxiety which seems to emanate from his belief that his father and step-mother hate his mother. From [P.J.]'s perspective, he reports hearing a great deal of negative, critical, and mean-spirited remarks about his mother.[4] . . . Of course, these situations have escalated the problematic co-parenting relationship that seems to exist between Jolene and Paul. . . .
> The hostility that exists between the two families is very troubling to [P.J.]. This situation has a direct effect on his ability to cope with life stressors and distracts him from normal developmental tasks.
> [P.J.]'s troubles are compounded given the current joint physical care status. He is under a great deal of stress.[5]

Jolene applied for modification of the decree of dissolution on April 10, 2013, claiming the circumstances since the order establishing joint physical care had substantially changed due to increased hostility between the parties and the deterioration of the children's mental and emotional well-being. Paul resisted Jolene's application. He filed an application for the district court to appoint a custody evaluator. The court did so. The evaluator conducted his evaluation and reported to the court, "It is my recommendation that the custody arrangement be modified so as to provide that the mother be the primary care giver and physical custodian."

---

[3] Jolene informed Paul of the arrangement and invited his input or participation. Paul elected not to participate and noted that he did not believe counseling was necessary.

[4] In an email to Paul, Jolene wrote, "[P.J.] says that [Cyrena] calls me an idiot, stupid, and bit[ch]. He has also said that Cyrena tell[s] them to hit me, not talk to me, not listen to me and that she is a better mom th[a]n I ever will be."

[5] Paul claims the counselor's findings are the result of a bias in Jolene's favor. We agree with the district court: there is no evidence in the record of any bias that would have guided the counselor's findings in one way or the other.

The district court conducted a hearing on the modification application. It heard the testimony of Jolene, Paul, Cyrena, and Paul's mother. The district court issued its modification order on December 30, 2013. In its order, the court made specific findings regarding the credibility of pivotal witnesses:

> Neither Paul nor Cyrena were credible while testifying. Cyrena in particular seemed to think that her time on the witness stand was a source of great amusement. . . . In Paul's case, it was difficult to determine at times whether he was actively attempting to mislead the Court or simply oblivious to the problems his children are experiencing and the causes of those problems.

Additionally, Paul's mother "vividly demonstrated her hatred of Jolene while testifying. Her dislike is so extreme that it is difficult to accept any of her testimony." The district court concluded:

> After considering all of the evidence in the case, the Court finds that there has been a substantial change in circumstances since the entry of the dissolution decree on October 31, 2011. The relationship between Jolene and Paul has deteriorated, in part due to Paul's new relationship with Cyrena. While [it] is certainly not unanticipated that a divorced parent will become involved with a new significant other, or even that the new significant other will not have a rosy relationship with the ex-spouse, no one would have anticipated the level of animosity and antagonism between Jolene and Cyrena. More important, the children's well-being has significantly deteriorated since October 31, 2011. The custody arrangement which the Court foresaw in October 2011 as being in the best interests of the children has turned out to the contrary, and the children are suffering as a result.

The district court found that "Jolene is a superior caretaker for the children not only as to Paul, but as to the prior joint physical care arrangement." It modified the dissolution decree, awarding Jolene physical care of the children while providing visitation rights for Paul. It ordered Jolene and Paul to begin co-parent counseling and awarded child support to Jolene. Paul appeals.

**II. Standard of Review**

We review a modification of a dissolution decree de novo. *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). We are not bound by the factual findings of the district court, but we give them weight; we give special weight to the district court's determination of the credibility of a witness. *See id.*

**III. Discussion**

> Courts are empowered to modify the custodial terms of a dissolution decree only when there has been a substantial change in circumstances since the time of the decree not contemplated by the court when the decree was entered, which is more or less permanent and relates to the welfare of the child.

*In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004). If modification is warranted based on a substantial change in circumstances, we then must determine if Jolene has satisfied the heavy burden of demonstrating that she can provide superior care. *See id.*

> Physical care issues are not to be resolved based upon perceived fairness to the spouses, but primarily upon what is best for the child. The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity.

*In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

Paul argues there has not been a substantial change in circumstances because the parties' combative relationship pre-dates the original dissolution decree. He argues, therefore, that the current antagonistic climate that exists between the two was within the contemplation of the court at the time of dissolution.[6] We disagree. Jolene asserted and the district court found that the

---

[6] Paul also argues the district court applied an "expectation" standard instead of a "contemplation" standard when considering whether Jolene's asserted changes in

current circumstances constitute a severe degeneration from the state of the parties' relationship at the time of dissolution. Additionally, measurable harm to the children has come to pass since the dissolution as reflected by the findings of P.J.'s counselor. Paul's refrain that the harms are merely "mild anxiety" lend credence to the district court's supposition that he is "oblivious to the problems his children are experiencing and the causes of those problems." We agree with the district court that there has been a substantial change in circumstances and that modification was proper.

Paul goes on to claim that Jolene has not demonstrated she possesses superior parenting skills. He also claims it is not in the children's best interests to modify their physical care. We disagree. In addition to the evidence that the children are exposed to an emotionally unhealthy environment at Paul and Cyrena's home, the record shows that Paul and Cyrena were slow to correct their bed bug infestation and quick to cast blame on third parties.

The record is clear that Jolene's home will serve as a better environment for the children's mental, emotional, and physical health. This is particularly true in that Paul has not demonstrated an understanding that there are real and tangible harms to the children that must be rectified. Based upon our analysis of

---

circumstances were within the contemplation of the court at the time of dissolution. While the court did use the words "expect" and "anticipate" in their plain-language sense in its discussion of what circumstances were within the contemplation of the court at the time of dissolution, it does not necessarily follow that the court crafted its own legal standard. There is no support in the record for this element of Paul's argument. Regardless, we reach the same conclusion as the district court on our de novo review by applying Paul's so-called "contemplation" standard.

the statutory considerations used to evaluate child custody matters,[7] Jolene has shown that she can provide superior care of the children and that it is in the children's best interests for her to assume their physical care. We therefore affirm the district court's modification.

**AFFIRMED.**

---

[7] Iowa Code section 598.41(3) (2015) provides in relevant part:

> In considering what custody arrangement . . . is in the best interest of the minor child, the court shall consider the following factors:
> a. Whether each parent would be a suitable custodian for the child.
> b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.
> c. Whether the parents can communicate with each other regarding the child's needs.
> d. Whether both parents have actively cared for the child before and since the separation.
> e. Whether each parent can support the other parent's relationship with the child.
> f. Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.
> g. Whether one or both the parents agree or are opposed to joint custody.
> h. The geographic proximity of the parents.
> i. Whether the safety of the child, other children, or the other parent will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation.

On our de novo review, we find that subsections (a), (c), (e), and (g) weigh heavily against continued joint physical care in that Jolene has demonstrated her parenting abilities are superior to Paul's, the parties clearly cannot effectively communicate with each other, Paul and Cyrena actively subvert the children's relationship with Jolene, and Jolene (along with P.J.'s counselor and the custody evaluator) is adverse to continued joint physical care. The value of any subsection supporting continued joint physical care—such as geographic proximity—is insubstantial in comparison to the serious nature of the contrary factors.