# IN THE COURT OF APPEALS OF IOWA

No. 14-2146
Filed September 10, 2015

IN RE THE MARRIAGE OF JOSHUA JAMES COCHRAN
AND MELISSA CHRISTINE COCHRAN

Upon the Petition of
JOSHUA JAMES COCHRAN,
     Petitioner-Appellant,

And Concerning
MELISSA CHRISTINE COCHRAN,
n/k/a MELISSA CHRISTINE MARVEL,
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Iowa County, Nancy A. Baumgartner, Judge.

     A father challenges the grant of physical care of their two daughters to his former wife. **AFFIRMED AND REMANDED.**

     John C. Wagner of John C. Wagner Law Offices, P.C., Amana, for appellant.

     Matthew J. Adam and Rae M. Kinkead of Simmons Perrine Moyer Bergman, P.L.C., Coralville, for appellee.

     Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, P.J.**

In the decree dissolving the marriage of Josh and Melissa Cochran, the district court granted physical care of their two daughters to Melissa, finding she had "clearly been a much greater presence in the children's lives than Josh" had been during the girls' early years. On appeal, Josh challenges only the physical care arrangement. After reviewing the trial record, we find both parents would be capable custodians, but we agree with the district court's assessment that approximation of the caregiving pattern during the marriage tips the balance toward placing physical care with Melissa.

## I. Background Facts and Proceedings

Josh and Melissa were married in August 2004. They have two daughters together; the girls were nine and seven years old at the time of trial. Josh and Melissa originally met and lived in Arizona. Melissa was a native of Gilbert, Arizona, where she started a modeling company. Josh worked in beverage distribution.

In the spring of 2006, Josh and Melissa moved to Iowa to raise their family. Josh was an Iowa native; he grew up in Oxford and has many relatives in that area. Josh and Melissa built a house in Williamsburg. The couple started a commercial lawn and cattle care business. Melissa did the bulk of the mowing. Melissa also worked for the University of Iowa from 2010 until 2012. Josh worked for an asphalt paving company. He worked long hours during the company's busiest season—April through November. During the offseason, he received unemployment and helped with the lawn and cattle business.

In early 2013, Josh and Melissa started considering a return to Arizona. They placed their Williamsburg house on the market and made trips to the Phoenix area to scout for a new home. Struggling to sell their Williamsburg house, the family placed items in storage. In July 2013, Melissa and the children moved in with Melissa's mother in Arizona; Melissa got a job at Arizona State University as an administrative assistant. Josh accompanied the family to Arizona and stayed until after the children's first day of school to help the family get settled. The couple made an offer on a house in Arizona, contingent on the sale of their Iowa property.

Josh then returned to Iowa to finish the paving season, but expressed his intent to return to Arizona in November. During their fall break from school, Melissa brought the girls to Iowa to visit Josh and to check on the sale of the Williamsburg house. During this visit, Josh and Melissa acknowledged problems in the marriage but agreed to work through them. Melissa's work required her to return to Arizona, but the couple agreed the children would stay with Josh until Christmas.[1]

Without prior notice to Melissa, Josh filed a petition to dissolve their marriage on November 1, 2013. He also filed a temporary injunction to prevent Melissa from moving the children to Arizona. Josh failed to inform the Iowa district court that the girls had been living in Arizona since July and were enrolled in school there. In a February 12, 2014, ruling on Melissa's application for temporary orders, the court described Josh's unilateral actions as "blindsiding"

---

[1] Josh and Melissa agreed the children would attend school in Williamsburg while they remained in Iowa.

Melissa. The court granted Melissa temporary physical care and the children returned to Arizona. In the temporary order, the court granted Josh visitation every other weekend from the end of the school day on Friday until 6:00 p.m. on Sunday, as well as six weeks of summer visitation, the children's fall break, and half of the children's winter break.[2]

The court held a contested custody hearing over three days in September 2014. On October 31, 2014, the district court issued a decree dissolving the marriage. The decree granted Josh and Melissa joint legal custody and granted Melissa physical care with liberal visitation for Josh. Josh now appeals.

## II.    Standard of Review

We review dissolution of marriage cases do novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). Although we decide the issues raised on appeal anew, we give weight to the factual findings, especially in regard to witness credibility. Iowa R. App. P. 6.904(3)(g); *In re Marriage of Witten*, 672 N.W.2d 768, 773 (Iowa 2003). Courts must resolve physical care issues based upon what is best for the children, not upon perceived fairness to the spouses. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.*

---

[2] Josh was responsible for sixty percent of his costs and Melissa was responsible for the remaining forty percent. The court noted Josh did not miss a weekend and the children spent more than six weeks with him over the summer.

## III.    Physical Care

Josh argues the district court erred in granting physical care of their daughters to Melissa and asks us to place them in his physical care.  His primary focus is on Melissa's hostility toward him and the availability of his network of extended family members in Iowa to participate in the children's lives.

We find both Josh and Melissa to be capable parents.  They both have shown a strong commitment to the children, despite showing disdain for one another while the divorce was pending.  After reviewing the trial record anew, we conclude the district court appropriately balanced the critical factors in deciding to place physical care with Melissa

In trying to determine the best interest of the children, we consider numerous factors, including but not limited to the suitability of parents, the psychological and emotional needs and development of the children, the quality of parental communication, the previous pattern of caregiving by the parents, and each parent's support of the other.  *See Hansen*, 733 N.W.2d at 696; *see also* Iowa Code § 598.41(3) (2013).

The district court found Melissa to be the children's primary caregiver throughout the marriage, with the exception of the fall of 2013 when they stayed in Iowa with Josh.  Josh does not argue to the contrary.  Instead, he claims Melissa's hostile behavior entitles him to an award of physical care.[3]

---

[3] Josh compares his situation to *In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996) (finding mother's "contentious disposition and hostile temperament incompatible" with an award of physical care).  We do not believe Melissa's conduct toward the children can be aptly compared to the mother in *Kunkel*.  Moreover, it is important to remember in custody determinations, "[p]rior cases have little precedential

It is true that, at points during the divorce case, Melissa has acted poorly. Her texts and telephone calls to Josh have been demeaning and profanity laced. In December 2013, Melissa appeared unannounced at the home of Josh's parents, demanding to take the children back to Arizona with her. The Johnson County Sheriff's Department had to be called to defuse the situation. When she regained care of the children, she was ungenerous with visitation time. Under the temporary decree, Josh flew to Arizona every other weekend to visit the children. His flight always left Monday morning, but on all but one occasion, Melissa refused to allow him to spend time with the children on Sunday evening after the visitation was officially over.

But neither has Josh covered himself with glory during the separation and divorce case. Josh filed for divorce without any forewarning to Melissa, when she believed he was planning to rejoin her in Arizona. And in doing so he engaged in a scheme to remove the children from Melissa's care. His secretive behavior signals he would not be supportive of the children's relationship with Melissa nor would he communicate effectively with her regarding joint parenting decisions. *See* Iowa Code § 598.41 (providing that when deciding custody issues, court is to consider "[w]hether each parent can support the other parent's relationship with the child"). Josh also showed a lack of cooperation when he transported the girls to Arizona following entry of the temporary decree and failed

value, and we must base our decision primarily on the particular circumstances of the parties presently before us." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004).

to cover their belongings, allowing them to become soaked and filthy from the drive.

While neither parent has been a saint, the hostility between them is not beyond the "usual acrimony that accompanies a divorce." *See In re Marriage of Gensley*, 777 N.W.2d 705, 715 (Iowa Ct. App. 2009). We do not find that Melissa's outlook or conduct since the initial separation disqualifies her from providing quality physical care. As the district court emphasized, Melissa has been the children's primary caregiver for most of their lives. Approximating that pattern of care will enhance the children's stability after their parents' divorce. *See Hansen*, 733 N.W.2d at 696–97.

Josh also points to his large extended family in Iowa as a consideration in deciding physical care. The district court addressed this claim: "I am not unmindful of the fact that Josh has a loving and extended family. However, I do not find that Josh's extended family or Melissa's lack of extended family in Phoenix should be the deciding factor in deciding primary physical care." We agree with the district court's assessment. While strong family support is undeniably important, it is not dispositive of our analysis. We are confident Melissa can fulfill the role of the physical-care parent and the children will have the opportunity to interact with Josh's extended family members during visitation times.

**IV.** **Appellate Attorney Fees**

Melissa asks for appellate attorney fees. Appellate attorney fees are not a right, but instead rest in our discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). "Specifically, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *In re Marriage of Gaer*, 476 N.W.2d 324, 330 (Iowa 1991). Because Melissa was obligated to defend the physical care arrangement on appeal and, based on their relative annual incomes, has less ability to pay than does Josh, we opt to award her attorney fees. But Melissa has not provided an affidavit of attorney fees with documentation to support her request. Therefore, we remand to the district court to enter judgment against Josh in a reasonable amount. *See Markey v. Carney*, 705 N.W.2d 13, 26 (Iowa 2005) (allowing amount of appellate attorney fees to be determined in the first instance in the district court because of the necessity for making a record).

We order Josh to pay the costs of the appeal.

**AFFIRMED AND REMANDED.**