# IN THE COURT OF APPEALS OF IOWA

No. 16-0252
Filed October 12, 2016

**Upon the Petition of**
**BRETT ALLAN MORRIS,**
        Petitioner-Appellant,

**And Concerning**
**SARAH OPOIEN,**
        Respondent-Appellee.

_____

Appeal from the Iowa District Court for Grundy County, Linda M. Fangman, Judge.

A father appeals from the district court's order denying the application to modify physical care and ordering the father to pay attorney fees. **AFFIRMED.**

Elizabeth M. Biwer of Papenheim Law Office, Parkersburg, for appellant.

Joseph G. Martin of Swisher & Cohrt, P.L.C., Waterloo, for appellee.

Considered by Danilson, C.J., and Mullins and Bower, JJ.

**DANILSON, Chief Judge.**

Brett Morris appeals from the district court's order denying the application to modify the physical care and visitation provisions of the parties' stipulated custody, physical placement, visitation, and child support decree regarding their minor child, M.M. Brett also appeals the district court's award of attorney fees to the mother, Sarah Opoien. Because we find no substantial change in circumstances and modification is not in the child's best interests, we affirm the district court's denial of the application to modify. We also affirm the district court's award of attorney fees, as we find no abuse of discretion.

## I. Background Facts and Proceedings.

Brett and Sarah were never married. In 2011, a decree was entered approving Brett and Sarah's joint stipulation to custody, physical placement, visitation, and child support regarding six-year-old M.M. The decree placed physical care with Sarah and provided Brett with liberal visitation, including every weekend except every fifth weekend when Sarah was not working, every Wednesday overnight, and evenly split holidays. Until 2015, the parties were able to work together to carry out the visitation plan amicably.

Sarah works only on weekends from Friday night at 7:00 p.m. to Monday morning at 7:00 a.m. to allow M.M. to be in her care during the week. Brett's work schedule is very busy from May to October, during which time he is required to travel and work approximately 100 hours per week. For the remainder of the year, Brett has a very relaxed work schedule, during which he works only ten to fifteen hours per week, is permitted to determine his own work schedule, and may often work from home.

Brett lives in Parkersburg with his wife and her two children. Prior to 2015, Sarah lived in close proximity to Brett, allowing for regular contact between Brett and M.M. in addition to his scheduled visitation days. In early 2015, Brett learned that Sarah intended to move to Des Moines to live with her boyfriend and his three children, ages ten, nine, and seven. Sarah did relocate to Des Moines in the summer of 2015.

Brett testified the drive between Parkersburg and Des Moines takes approximately two hours. Once M.M. began attending school, the Wednesday overnight visitation became impractical and stopped. The parties both agree Sarah attempted to provide Brett additional time on no-school days and in the evenings to make up for the Wednesday visitations, but the extra time was not equal to that missed. Additionally, after her move Sarah obtained a new job in Des Moines and works every three weekends out of four instead of her previous four out of five. This limits the number of weekends Brett has M.M. in his care.

Brett filed a petition to modify the stipulated custody decree on January 22, 2015, arguing Sarah's move to Des Moines constitutes a substantial change in circumstances warranting modification.

On June 30, 2015, a few days prior to the originally-scheduled modification trial, an incident that was sexual in nature occurred between M.M. and the ten-year-old child of Sarah's boyfriend. Other than failing to notify Brett of the incident immediately, Sarah took appropriate steps to address the situation. Sarah and her boyfriend separated the children and Sarah entered a police report shortly after the incident. Both children immediately began

attending counseling sessions. The modification trial was continued, and the court ordered no contact between M.M. and the other child.

The modification trial was held December 2-3, 2015. Brett requested the court place physical care with him and establish visitation for Sarah on the weekends. In the event physical care remained with Sarah, Brett also suggested that instead of returning M.M. on Sunday evenings he be permitted visitation with M.M. until Monday morning, allowing for additional time to replace the lost Wednesday night visitation.

In a December 17, 2015 order, the district court denied Brett's application for modification of physical care. However, the court did modify the visitation schedule, giving Brett visitation every weekend Sarah is working from Friday evening to Monday morning, splitting M.M.'s Christmas break between Brett and Sarah, designating alternate years for spring break, and providing Brett three weeks of visitation in the summer to be taken in one-week increments. The court also ordered Brett to pay Sarah's attorney fees in the amount of $5610 pursuant to Iowa Code section 598.36 (2015). Brett now appeals.

**II. Standard of Review.**

Our review is de novo. *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996). "Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004). "We give weight to the trial court's findings of fact, but are not bound by them." *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). Moreover, "even if a substantial change is shown, we will not modify the terms of the decree unless

its enforcement will be attended by a positive wrong or injustice as a result of changed conditions." *In re Marriage of Sjulin*, 431 N.W.2d 773, 776 (Iowa 1988).

We review the district court's award of attorney fees for an abuse of discretion. *In re Marriage of Michael*, 839 N.W.2d 630, 635 (Iowa 2013).

**III. Analysis.**

*A. Modification of Physical Care.* Courts may modify custody only when the party seeking modification has shown "there has been a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the child." *Melchiori*, 644 N.W.2d at 368. The party seeking modification "must also prove he has an ability to minister more effectively to the children's well-being."[1] *In re Marriage of Thielges*, 623 N.W.2d 232, 235 (Iowa Ct. App. 2000). The controlling consideration is the best interests of the child. *Id.* at 235-36. "The objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 698 (Iowa 2007).

Brett asserts Sarah's move to Des Moines constitutes a substantial change in circumstances warranting modification of the stipulated custody decree. Brett contends placing physical care with him is in M.M.'s best interests and he has superior capabilities to parent M.M. due to the parties' schedules, his familial support, and the incident involving Sarah's boyfriend's child.

---

[1] The burden to prove a change of circumstances justifying a change of visitation is less demanding than the burden to change physical care. *Thielges*, 623 N.W.2d at 235.

In its order denying Brett's application for modification, the court held:

> From the evidence presented, the court finds that the best interest of M.M. will be best served by maintaining her placement with [Sarah]. M.M. is six years old and has lived with [Sarah] her entire life. [Sarah] has provided primary care for M.M. since her birth and has specifically structured her work schedule around M.M.'s schedule. . . . M.M.'s schedule is such that she is accustomed to spending the week with [Sarah] and weekends with [Brett]. If primary placement were to change to [Brett] now, that change would require a total restructuring of M.M.'s schedule as well as [Sarah]'s schedule. While the court notes that there has been a change in circumstances, that being the move, the Court does not find that it has been a substantial change. The move from M.M.'s residence in Dike, Iowa, to West Des Moines, Iowa, is not 150 miles or greater. The trip can be made in approximately two hours. [Sarah] has said and demonstrated her recognition of the need to ensure sufficient contact between [Brett] and M.M.

The district court also found the incident with Sarah's boyfriend's child did not constitute a substantial change in circumstances because it was an isolated incident and Sarah and her boyfriend are taking appropriate steps to address the problem. The court adopted the safety plan recommended by the children's counselors that all contact between the children be carefully supervised.[2]

We agree with the district court that the change in circumstances is not substantial and do not require modification of the physical-care arrangement. Iowa Code section 598.21D provides the court may consider a relocation a substantial change in circumstances if the child is relocated 150 miles or further.[3] Sarah's move was less than 150 miles. Additionally, although M.M. must travel

---

[2] The court addressed the previous July 10, 2015 order preventing contact between the children in an order entered October 26, 2015. In accordance with the recommendations of the children's therapists, the court ordered limited fully-supervised contact between the children. To effectuate the no-contact order and the later imposed limited contact, the mother's boyfriend's child resides primarily with his mother.

[3] Actions to determine paternity and custody concerning never-married parents are governed by Iowa Code chapter 600B. Section 600B.40 refers the court to chapter 598 factors, thus we consider section 598.21D relevant.

further for visitation with Brett, Wednesday night visitation is no longer feasible, and it is no longer easy for Brett to have extra contact with M.M. outside of visitation days, the visitation schedule did not substantially change. M.M. is accustomed to being with Sarah during the week and Brett on the weekend, this general schedule remains the same.

The sexual incident with Sarah's boyfriend's child also does not constitute a substantial change in circumstances. The sexual conduct, while certainly of justifiable concern to both parents, occurred on only one occasion, and there is no indication at this time that reoccurrence is likely—particularly in light of the ages of the children, actions taken by Sarah and her boyfriend, and the involvement of counselors for both children. Sarah and her boyfriend took immediate steps to address the conduct, prevent it from happening in the future, and protect the other children in the household. Both counselors testified the children are working through issues surrounding the incident and recommended the children have contact in a supervised setting. The incident did not create a change in circumstances so substantial as to require modification placing physical care with Brett.

We also agree with the district court that it is in M.M.'s best interests to maintain the current physical-care arrangement. Most significantly, retaining the current physical-care arrangement will avoid further disruption in M.M.'s life. Both parents and M.M.'s counselor testified M.M. was experiencing separation anxiety as a result of stress due to changes in M.M.'s daily routine. To change M.M.'s weekly schedule, living arrangements, and school at this time would be detrimental to M.M.'s mental health and well-being. Also, placing physical care

with Brett during the week and establishing weekend visitation for Sarah would be impractical as Sarah works most weekends. It is in M.M.'s best interests to maintain physical care with Sarah, who has been M.M.'s primary caregiver from M.M.'s birth.

We additionally note the visitation schedule as modified by the district court provides for liberal visitation with Brett. While eliminating Wednesday night visitation, the modified visitation schedule allows for more time each weekend and permits Brett to take M.M. to school on Monday mornings. And although the move allows for less extra contact between Brett and M.M. outside of visitation days, Sarah recognizes the importance of M.M.'s relationship with her father, and has shown she facilitates contact between them. While we acknowledge Brett's desire to maintain as much contact with M.M. as possible, retaining the current physical-care arrangement allows for the least disruption in M.M.'s life while continuing to promote Brett's relationship with M.M.

We also agree with the district court that adoption of the recommended safety plan requiring supervised contact between the children is in M.M.'s best interests. Sarah's appropriate actions following the incident indicate she will act in M.M.'s best interests and ensure M.M.'s safety going forward. We note immediate and transparent communication by both parents regarding serious incidents or concerns in the future is also in M.M. best interests.

We find there has not been a substantial change in circumstances requiring modification and the current physical-care arrangement is in M.M.'s best interests.

*B. Attorney Fees.* Brett also contends the district court's award of attorney fees in the sum of $5610 was improper.

Iowa Code section 598.36 provides, "In a proceeding for the modification of an order or decree under this chapter the court may award attorney fees to the prevailing party in an amount deemed reasonable by the court."[4] "An award of trial attorney fees rests in the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion." *McKee v. Dicus*, 785 N.W.2d 733, 740 (Iowa Ct. App. 2010). Although the court slightly modified the parties' visitation schedule, Sarah was successful in defending the application for modification. We therefore find it was not an abuse of discretion to award Sarah reasonable attorney fees. *See In re Marriage of Hayden*, No. 15-0600, 2015 WL 9451084, at *2 (Iowa Ct. App. Dec. 23, 2015) ("And though the court found that [the respondent]'s need for support had been reduced somewhat, [the respondent] successfully defended her continuing need for spousal support. We find no abuse of the trial court's discretion.").

Sarah also requests appellate attorney fees in this matter. "An award of appellate attorney fees is not a matter of right, but rests within our discretion. We consider the needs of the party making the request, the ability of the other party to pay, and whether the party was required to defend the district court's decision on appeal." *In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007)

---

[4] Although this case involves never-married parents and the applicable Iowa Code section would generally be section 600B.26, the district court and parties cite only to section 598.36. Therefore, we apply section 598.36. We also note section 600B.26 contains similar language to section 598.36. Section 600B.26 states, "In a proceeding . . . to modify a paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees." Thus, our conclusion is the same under application of either section.

(citations omitted). Upon consideration of these factors, we require Brett to pay $1000 towards Sarah's appellate attorney fees.

**IV. Conclusion.**

Because there has not been a substantial change in circumstances and modification of the physical-care arrangement is not in M.M.'s best interests, we affirm the district court's denial of the application for modification. We also find the district court did not abuse its discretion in awarding trial attorney fees.

**AFFIRMED.**