# IN THE COURT OF APPEALS OF IOWA

No. 21-0647
Filed January 27, 2022

IN RE THE MARRIAGE OF SARA RENEE JOHNSON
AND GREGORY KEITH JOHNSON

Upon the Petition of
SARA RENEE JOHNSON,
     Petitioner-Appellant,

And Concerning
GREGORY KEITH JOHNSON,
     Respondent-Appellee.
_____

     Appeal from the Iowa District Court for Marshall County, James C. Ellefson,

Judge.

     A mother appeals the modification of physical care. **AFFIRMED.**

     C. Aron Vaughn of Kaplan & Frese, LLP, Marshalltown, for appellant.

     Reyne L. See of Peglow, O'Hare & See, P.L.C., Marshalltown, for appellee.

     Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**TABOR, Judge.**

For years, divorced parents Sara and Greg Johnson shared physical care of their two children. But after Sara introduced the children to dangerous men, Greg moved for modification. Because we agree Greg proved a material and substantial change in circumstances and the new arrangement is in the children's best interests, we affirm the modification.

Sara and Greg have been successful co-parents. Divorced in 2014, the pair exchange physical care of K.S.J. (born in 2009) and L.J.J. (born in 2011) every other day during the school year.[1] K.S.J. and L.J.J. have thrived under this arrangement. By all accounts, they are healthy and well adjusted.

Co-parenting aside, Sara and Greg have different lifestyles. Greg has been a line foreperson for Alliant Energy for fourteen years. Sara has held less stable jobs—working in cosmetology, childcare, and most recently at a local restaurant-bar. Beyond employment, they have different housing situations. Greg lives on an acreage in rural Marshall County. There, the children get a taste of farm life, collecting eggs and raising show pigs. Sara lives in town where she maintains close ties with her family. Her mother and her sister live within five minutes of Sara's four-bedroom house.[2] And family activities are frequent.

But the most notable difference between Sara and Greg is their romantic relationships since their divorce. Greg is remarried. Jocelin, Greg's wife, has been a positive influence—taking an active role in K.S.J.'s and L.J.J.'s lives. Sara has

---

[1] In summer, the children spend alternating two-week blocks with each parent.
[2] Sara resides rent-free in her mother's home. And Sara has been using her mother's vehicle since her own broke down.

dated persistently. Greg testified that she introduced the children to at least six men. But those men have not been positive contacts for the children.

Sara began dating Jared in March 2018. Soon, Greg and the children noticed signs of abuse. Sara showed up bruised to L.J.J.'s football game. The children saw her with black eyes.[3] And by spring 2020, she had a no-contact order against Jared. Despite his actions, Sara maintained an on-again, off-again relationship with Jared. Not only abusive, Jared was unfaithful. While with Sara, he dated another woman. Angry, Sara contacted her. In the heated text-exchange, Sara made her continued commitment to Jared clear, boasting about the matching cigarette burns that they had on their ring fingers and her attempts to have his child.

But, most relevant to this appeal, was Jared's effect on the children. Although they never witnessed it firsthand, they noticed the signs of their mother being abused. K.S.J. was particularly impacted, so, with Greg's blessing, she began seeing a therapist. They discussed her mother's choice in men—Jared in particular. Similarly, the children voiced their concerns to Greg and Jocelin who both emphasized that Sara's "bad choices" shouldn't shade their feelings toward their mother. By May 2019, Greg moved to modify the physical care arrangement. Still, Jared maintained a hold over Sara. And despite the legal proceedings, the no-contact order, and the children's distress, Sara refused to leave Jared.[4]

---

[3] At the time, Sara claimed a dog dropped a bone on her, causing the bruising.
[4] In fact, Jared's other girlfriend tried to get under Sara's skin by referencing the then-pending custody dispute and the no-contact order. In response, Sara stated, "He knows about it and he knows when I'm dropping it."

In the end, it took Jared's incarceration to close out the relationship once and for all. In June 2020, during a pause in their relationship, Jared showed up unannounced and drunk at Sara's house early in the morning. There, he attacked her and her male visitor. For his actions, Jared was arrested, charged, and sentenced to twelve years in prison.

But Jared's damage was done, and Sara's vow to turn over a new leaf did not impress the district court. The court was troubled by Sara's bond with Jared, as well as her relationships with other untrustworthy men. So in March 2021, it modified the physical care arrangement, awarding Greg physical care. Sara now appeals.

We review child custody decisions de novo, deferring to factual findings—particularly credibility ones. *Thorpe v. Hostetler*, 949 N.W.2d 1, 4–5 (Iowa Ct. App. 2020). District courts are given reasonable discretion in determining whether to modify. *In re Marriage of Kern*, 408 N.W.2d 387, 389 (Iowa Ct. App. 1987). That discretion will be disturbed only if there is a failure to do equity. *Id.*

To persuade the court to modify physical care, Greg must show (1) a material and substantial change in circumstances and (2) that he can minster more effectively to the children's well-being. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). We take the two steps in turn.

A substantial change in circumstances is one not contemplated by the district court at the time of the decree. *In re Marriage of Maher*, 596 N.W.2d 561, 565 (Iowa 1999). The change must be "more or less permanent and relate[] to the welfare of the child[ren]." *In re Marriage of Malloy*, 687 N.W.2d 110, 113 (Iowa Ct. App. 2004).

As a change in circumstances, the district court found that Jared rendered Sara "incapable of protecting her children or providing for their best interests." She disagrees, downplaying Jared's impact on the children. She insists that Jared was "never harmful to the children or physically hurt them" and that the children weren't present when he assaulted her. Defending the district court's ruling, Greg points to the negative effect domestic abuse can have on children's development.

Indeed, we've recognized that effect before. *See In re Marriage of Brainard*, 523 N.W.2d 611, 615 (Iowa Ct. App. 1994). "Children raised in homes touched by domestic abuse are often left with deep scars, revealed in the form of increased anxiety, insecurity, and a greater likelihood for later problems in interpersonal relationships." *Id.* So domestic abuse factors into custody determinations. *See in re Marriage of Daniels*, 568 N.W.2d 51, 54 (Iowa Ct. App. 1997); *see also In re Marriage of Courtade*, 560 N.W.2d 36, 36 (Iowa Ct. App. 1996) ("The criteria for determining child custody are applied in modification proceedings.").

No question, Sara compartmentalized well, and the children did not witness the abuse firsthand. But the effects were felt all the same. Indeed, they have already manifested. Both children fear Jared and their mother's future choices. This fear has turned into nightmares for K.S.J. The nightmares got so bad that she asked her father for a dreamcatcher. And K.S.J.'s therapist diagnosed her with an adjustment disorder.

Next, Sara argues that the change in circumstances, if any, was temporary. She believes she has learned to "recognize the red flags" and protect herself. She also points to Jared's twelve-year prison sentence and their lack of communication since June 2020 as evidence that he is out of her life for good.

We don't seek to downplay Sara's growth. But we defer to the district court's determination on this matter. True, by trial, Sara had not spoken with Jared for about eight months. But Jared was not the only troubling man in Sara's life. She had several problematic paramours. Collectively, her former partners had over ten convictions—some felonies, some domestic assaults, and some for methamphetamine.[5] To her credit, most of these relationships were short-lived— Jared being the exception. But she still introduced her children to risky men. And these men had a negative influence on the children. Given Sara's serial lapses in judgment, the district court was justified in its finding.

Having found a substantial and material change of circumstances, we next ask whether Greg has shown the ability to offer superior care. *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). Generally a "heavy burden," *see id.*, it is less when the petitioning parent seeks to end joint physical care. *See In re Marriage of Lehman*, No. 21-0468, 2021 WL 5919046, at *3 (Iowa Ct. App. Dec. 15, 2021). As we review the modification decision, we consider the factors in Iowa Code section 598.41(3) (2021). *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007) (finding custody factors apply to physical care decisions). Our primary concern is the children's best interests. *Id.* They should be placed "in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Id.*

Sara argues against modification, asserting the children are happy, well-adjusted, and that she meets their needs when she has physical care. Even if we

---

[5] Sara met one of these men while he was living at a halfway house.

accept Sara's assertion, the record shows Greg can offer superior care. *See Melchiori*, 644 N.W.2d at 368. Homework logs and parent-teacher emails reveal that Greg and Jocelin take the more active role in the children's education. And while Greg and Jocelin support K.S.J.'s therapy, Sara downplays its necessity.

What's more, Sara's "bad choices" extended beyond dating. There's evidence she made bad decisions about alcohol consumption.[6] She showed questionable judgment when arranging child care.[7] And Sara has inappropriately crossed parenting lines. For example, she asked K.S.J. to help her find a new boyfriend on a dating app. And, because Sara did not monitor phone access, K.S.J. saw a nude photo that Sara received.

Plus, since his remarriage, Greg has three more children. K.S.J. and L.J.J. would profit from time with their siblings. *See In re Marriage of Will*, 489 N.W.2d 394, 398 (Iowa 1992) (noting "benefit of constant association" with siblings).

Without a doubt, the children love their mother. But they've expressed justified concerns about their safety in Sara's home. Because the changed circumstances support modification, and the new physical-care arrangement is in the children's best interests, we affirm.

**AFFIRMED.**

---

[6] Sara was temporarily let go from her restaurant-bar job after reporting to her morning shift still drunk from the night before. Sara claimed she was hungover. But her boss testified that "as the owner of a drinking establishment" she can tell the difference between drunk and hungover. Beyond the work incident, Sara's TikTok videos show irresponsible drinking tendencies. For example, in one clip Sara appears mixing a margarita while behind the wheel of her parked car.

[7] True, Greg is Sara's go-to when she needs child care. But at least once, Sara's babysitter abandoned the children to meet Sara at the bar. It's unclear from the record whether Sara was at the bar as a patron or employee.